Let me get the lawyers correct. It's Mr. Smith for Weyerhaeuser. Peyton Smith on behalf of Weyerhaeuser Company and Weyerhaeuser N.R. Company. May it please the court. This court should reverse the district court's 12B6 dismissal and remand with instructions to deny the motion to dismiss for two primary reasons. First, Weyerhaeuser N.R. is an additional insured under the subject policies, a fact that is undisputed. Can you slow down just a little bit? I can't help. Thank you. And Weyerhaeuser Can you just say that again? Weyerhaeuser N.R. is what? Is an additional insured under the subject policies, which is a fact that is undisputed. And Weyerhaeuser has pled that Weyerhaeuser N.R. was the proper defendant in the underlying litigation, participated in the underlying litigation, and settled the underlying litigation. As such, Weyerhaeuser N.R. is entitled to both defense and indemnity under the insurance policies. And second. Go ahead. Separate from coverage as an additional insured, both Weyerhaeuser N.R. and Weyerhaeuser Company are third party beneficiaries of the insurance policy, pursuant to the contractual liability amendment and the manufacturing agreement executed between Weyerhaeuser and the named insured, Simsboro. Therefore, Weyerhaeuser N.R. and Weyerhaeuser Company are entitled to reimbursement for defense costs and settlement payments in the underlying litigation. I'd like to begin with the discussion of the duty to defend for Weyerhaeuser N.R. as an additional insured. Well, that's what I was going to ask, I guess, when I interrupted you, and I'm sorry for that. But what is the source of the confusion in the underlying litigation about who was the right party? In other words, they named Weyerhaeuser? They were named Weyerhaeuser Company. But Weyerhaeuser N.R. was supposed to be the right party? That's correct. Why is there any ambiguity about that? Because, I mean, when I was litigating, if the wrong party got named, we moved to dismiss or substitute or something. Was that done? So as we plied, the subsequent pleadings made clear that Weyerhaeuser N.R. was the proper party. But was the party properly substituted? In other words, that's what the briefing says. It's like, well, everybody knew that N.R. was really who was supposed to be there. But that's not who was there, was it? So it's a little bit complicated because there were three different cases, some of which were essentially there was a lawsuit filed. They were litigated as kind of an effectively consolidated fashion. And so there was no responsive pleading filed in, for instance, the Boudreaux 2 case. And so there was no answer wherein Weyerhaeuser N.R. entered an appearance in the case and said we're the proper party. But in other cases, I mean, Weyerhaeuser, this happens to Weyerhaeuser all the time where companies sue the parent, the company whose name pops up if you Google Weyerhaeuser. They sue Weyerhaeuser Company when, in fact, the wholly owned subsidiary, Weyerhaeuser N.R., is the proper defendant. And typically, Weyerhaeuser N.R. Company just enters an appearance and says we're the proper party. But is that in the record that they did it here? Well, Your Honor, what we've pled, again, because the case was dismissed at 12B6, the record is underdeveloped in terms of what the actual pleadings happened in the underlying case. But we've pled that the subsequent pleadings clarified this issue in those cases. And as we've stated, all of the subject dismissals, ultimate dismissals in the case, were dismissals entered with respect to Weyerhaeuser N.R. Company. When you're saying it's that obvious, and just from the record, because I was thinking maybe it isn't that obvious. Am I wrong that Weyerhaeuser Company was responsible for this flakjack coding that's at the essence of the litigation and N.R. merely owns the facility? Or is that wrong? That's wrong, Your Honor. So Weyerhaeuser N.R. Company, across the board, all the conduct alleged in the underlying cases is ultimately conduct with respect to Weyerhaeuser N.R. Company. And so they are truly the only proper defendant in the case. They're the ones with this formulation, this coding formulation. It's N.R. It's not the Weyerhaeuser Company. That's correct, Your Honor. So all liability is Weyerhaeuser N.R. Company. And, Your Honor, you know, we would also direct the Court to the fact that, you know, the standard here is did the underlying allegations reveal a possibility of liability under the policy? And a look at the policy and the petition reveal almost a perfect overlap between what is covered by the policy and the information in the policy and the allegations in the petition. Weyerhaeuser, I mean, the policy states that there are, that I'll read it directly, that the coverage is for personal injuries caused in whole or in part by Simsboro's acts or omissions and the performance of their ongoing operations for the additional insured at the locations designated above. So substituting in the covered location, the covered operations, those things that are elsewhere in the policy, it's read literally to say that it covers injuries occurring in the performance of Simsboro's work spraying fire-resistive coating on wooden joists and trusses for Weyerhaeuser N.R. at 256 Duraflake Road in Simsboro, Louisiana. A look at the underlying petitions reveals that the allegations in all three petitions are for personal injuries to Simsboro employees and their spouses that arose out of the performance of their work spraying fire-resistive coating on wooden joists and trusses at 256 Duraflake Road in Simsboro, Louisiana for Weyerhaeuser Company. So there is literally the only difference here is that there is an omission of two letters, which is a classic misnomer, and we believe that a review of the factual allegations construed liberally and viewed in light of the information in the petition and in the policies makes clear that there was a possibility of liability under the policy. And in fact, the insurers here covered Simsboro in these cases under this exact policy. The policy is a narrowly constrained policy covering one set of operations that expressly identifies Weyerhaeuser N.R. Company as essentially the company in which Simsboro is working in those circumstances. And so we believe that that is a sufficient basis for the court to reverse simply on the fact that there was a and we think that's the right outcome here is for the district court to be reversed on the basis of the fact that there was a possibility of liability just on a plain reading of the information in the policy and the information in the petition. We would further recognize that Louisiana courts have looked outside the pleadings and outside of the original petition in evaluating these things. Like the magistrate judge in her opinion states that Louisiana courts look outside the pleadings and then stated, but the Grimaldi case, which is the case we've cited for that proposition, doesn't stand for the proposition that a company can be liable if it's not named in the underlying lawsuit. But here, as we've alleged, this is a misnomer. By definition, those are cured by subsequent pleadings. We would direct the court to the Tunstall case, which is a Louisiana Supreme Court case actually cited in the insurer's brief, wherein Phoenix Insurance Company was not named in the underlying petition. There was no amendment to the petitions, and it was never served with process, but it was the actual insurer for the driver in the case. The plaintiff sued Travelers Insurance Company, believing they were the proper insurance company, but Phoenix stepped in and said, actually, we're the insurer for the defendant here, and so we'll be the ones litigating the case. The Louisiana Supreme Court went on to conclude that the only just, legal, and proper outcome was to have the judgment be fashioned against Phoenix Insurance Company. So that case, among the others that we've cited, undercuts the notion that there was no possibility of liability, simply because Weyerhaeuser, in our company's name, didn't appear in the original petition. And then, moreover, Your Honors, as we've pled here, the insurers knew the misnomer. At the time that these cases were filed, they were aware all along. And other circuits, we would direct the court, in particular, to the Romara case from the Third Circuit, which has stated that even under the eight corners rule, it does not permit an insurer to, quote, make coverage decisions with blinders on, disclaiming knowledge of coverage-triggering facts. And other circuits have referred to that as the insurers burying their head in the sand. That's exactly what we contend happened here. The insurers knew of the misnomer. They weren't misled or confused. They knew who the true defendant was, but they here have filed a motion to dismiss, despite that fact. And we would also note that there's no prejudice to the insurers. I mean, this was not the basis on which the insurers denied coverage either, as we've alleged. We pled in our briefing, the first time we heard of this mix-up naming issue being a basis for denying coverage was at the motion-to-dismiss phase. Six months after this, we sued them six months after we settled the underlying litigation, which lasted for several years. At no point did this issue come up. Beyond that, the duty-to-defend issue, we also believe the district court very clearly erred with respect to dismissing Wehrauser N.R.'s indemnity claim in the underlying litigation. The magistrate judge based that dismissal off of the conclusion that because the duty-to-defend's breadth is broader than the duty-to-indemnify, logic would dictate, as some courts have phrased it, right, logic would dictate that if the duty-to-defend doesn't apply, there is no duty-to-indemnify. Simply put, that logic completely falls apart, where the sole basis for denying the duty-to-defend is a misnomer in the original petition, particularly one in which we've alleged is subsequently cured and clarified by the evidence in the underlying case. And so those logic dictate cases make sense in the context of the application of a policy exclusion, but it doesn't make sense here. And this court in the Markko case has very directly addressed that issue. This court made clear that in interpreting Louisiana law, factual inquiries beyond the complaint are, quote, indispensable in assessing the duty-to-indemnify. This court stated that it must apply the policy to the actual evidence adduced in the underlying liability trial together with any evidence introduced in the coverage case. So evidence in the underlying litigation and potentially new evidence in a coverage case, yet here we were dismissed at the 12B6 phase. And in footnote 1 of the Markko case, the court goes on to explain that the relative breadth of the duty, right, that the basis of those logic dictate cases is about the breadth of the duty. And this court stated that the relative breadth of the duty is actually irrelevant to the duty-to-indemnify analysis and that they have separate interpretive frameworks that the court must apply. So the court erred in dismissing our Weyerhaeuser N.R.'s claim for indemnity as an additional insurer. Lastly, I would like to address the third-party beneficiary claims of Weyerhaeuser Company and Weyerhaeuser N.R., which are claims for reimbursement of defense and settlement costs based on the contractual liability provisions in the manufacturing agreement and the fact that the insurance policy covers those damages through the contractual liability amendment. Doesn't Savoy kind of address that issue? It does not, Your Honor, actually. So we believe the Savoy case, as the insurers note in their 28J letter on the third-party beneficiary claim, they say their contention is that a purported contractual indemnity cannot rely on Louisiana's third-party beneficiary case law to create additional insured coverage as a matter of Louisiana law. Well, that's a straw man. We're not claiming that we're entitled to additional insured coverage. We're claiming that we're entitled to damages because the underlying litigation is complete, and so therefore the indemnity damages exist, right? The liability is created at the time that the underlying litigation is completed. That would be as against Simsboro, right? It will be as against Simsboro, but the underlying policy covers those expenses. It explains that we believe it states that in the deductible section, for instance, it states that it will pay damages on Simsboro's behalf. So if it's paying on Simsboro's behalf, it's paying those damages not to Simsboro, but to the person that Simsboro owes it to here, Weyerhaeuser, and it contemplates that under the contractual liability provisions that coverage is for reasonable attorney's fees and necessary litigation expenses incurred by a party other than uninsured. And so our contention, and we would direct the Court to Rogers as the most directly analogous case on this point, as with respect to whether you have standing to pursue a third-party beneficiary claim directly against an insurance company and that a contractual liability amendment does give that standing to pursue a third-party beneficiary claim directly against the insurer. Lastly, we would note that the Savoy case concludes that the Rogers court was wrong. Those are two separate Louisiana appellate courts. The Rogers case decided in 2019. But the sole basis for concluding that Rogers was wrong by Savoy was that the insurance, that the Rogers court, quote, ignored the fact that Zurich had no part in the MCSA, which was the insured contract in that case, and went on to say that, therefore, you know, the contract between a named insured and a third party, quote, has no effect on Burlington. That's simply not true where the insurance policies specifically contemplate providing coverage for contractual liabilities between a named insured and a third party. That just doesn't follow. And so Savoy doesn't touch the idea that the insured contract that's referenced in the policy is the Simsboro NR. That's correct. Thank you. Okay. Now, Mr. Elliott. Ms. Elliott. I'm really messing up the name. Yes, please, go ahead. May it please the Court, Celeste Elliott on behalf of the Burlington Insurance Company. Names mean something. A lot of times we're not named correctly with respect to Burlington Company and will appear for the Burlington Insurance Company. But I will tell you, if my parent company is named and it's not Burlington Insurance Company, I will get that company dismissed and substituted, or I will file an exception to get them out. And in fact, in this case, although it's not before the Court, it's certainly publicly available, Weyerhaeuser Company appeared in each of these cases. It wasn't until much, much later that Weyerhaeuser NR appeared. And in fact, in Boudreaux II, they didn't appear until the dismissal. And there's actually a published case in which they argued in the Washington Court that Weyerhaeuser Company was the statutory employer. And that's Boudreaux v. Weyerhaeuser Company, 10 Washington, Act II, 289, 2019. So the notion that this is just, you know, they were, you know, the plaintiffs didn't know or the plaintiffs were not citing the right company is, you know, not accurate. You can test. I mean, they say that, well, everybody knew that NR was the real party and that subsequent pleadings, I guess, cleared that up. You can test that. That was my original questions to them. Judge Wilson, that's correct. I, Burlington, was not in the case. As counsel, I was not in the case. But if you look at the record, Weyerhaeuser Company appears. These are separate companies, Weyerhaeuser Company and Weyerhaeuser NR Company. They're separate, distinct companies. And even the magistrate noted that they use sometimes loosely, they'll define Weyerhaeuser NR Company as Weyerhaeuser and sometimes they go back and forth without, you know, making it clear which entity they're talking about. If NR had been clearly identified as the defendant, there'd be no question that you would owe a duty to defend. Depends what suit, Your Honor. It depends what suit. And certainly that would be our position. We have no duty to indemnify. But in Boudreau 1, the Washington case, there was no mention of Simsboro. The fact, and, Your Honor, there's several cases that say this, where, you know, where there is no negligence alleged on behalf of your insured, then there is no coverage under the additional insured endorsement. They are strangers to our policy. We have an additional insured endorsement. It says they are additional insureds, but only for the liability caused in whole or in part by Simsboro, by the acts or omissions of Simsboro. And if there are no acts or omissions of Simsboro, then there is no liability. Are they both named as additional insureds? Weyerhaeuser NR Company is the only additional insured. The Weyerhaeuser Company is not named. Weyerhaeuser Company is not named, and appellants have admitted this, and it's clear from the record that Weyerhaeuser Company is not an additional insured, and they've admitted it. The policy will say it. I just couldn't remember, but I thought only one was named. Yeah. Weyerhaeuser NR Company is the only entity named. And even if you look at the allegations where they're saying, oh, well, this is clearly a misnomer, they say Weyerhaeuser Company was the largest owner of timberland in the world. That is Weyerhaeuser Company, and they even admit that in their appeal brief. That is who Weyerhaeuser is. So the fact that they come several years even later and come before and substitute on their own a different company does not create an obligation under my policy. Louisiana, first with respect to the duty to defend, we are an eight-corner state. The case file that they cited to has nothing to do with looking outside the pleadings, the petition itself to find coverage. And, in fact, the cases that they cite support our argument. In the Bryant case in particular, the court did mention, oh, well, we looked to pleadings and other documents, but it was to determine whether or not issue was joined on the duty to defend. It was not to determine whether there was a defense obligation. When the court in Bryant, which is a Louisiana Fourth Circuit opinion, specifically looked at the duty to defend, they were constrained by the four corners. There was a petition that named the company and a supervisor. And based on that, there was no coverage because the plaintiff was an employee and under the exclusion and the person's insured endorsement, there wouldn't be coverage for a claim made against the employee, against the employer, or this supervisor. So they come in and come with an affidavit. Well, look, executive officers are carved out, and there should be coverage. And the court says, no, we are constrained by the eight corners. And in Grimaldi, if you look at that, which is one of the ones that they cite on, they were looking at a reconventional demand that was filed against the insured. There's no notion that somebody years later can make an appearance, after already making an appearance, by the way, but make an appearance and substitute themselves voluntarily without a dismissal, without an amended petition to do otherwise would allow any defendant to just come in and impose an obligation on an insurer by just saying, oh, it was just simply a misnomer. They just got it all wrong. Counsel, what about, as I understand Counsel Opposite's argument, this is a Rule 12 motion to dismiss, right? Yes, Your Honor. So at the pleading stage, without violating the eight corners principle, is there enough there to survive a motion to dismiss? In other words, given all this history and there's ambiguity as far as which party was actually there, substantively there, really there, I mean, I don't know how to stylize that, but is there enough there to basically deny a motion to dismiss and try to figure out how much of this, practically speaking, is NR versus Weyerhaeuser itself? It doesn't matter, Your Honor, because the court is constrained by the eight corners, and the eight corners are the document, the petition, and if there had been an amended petition, it would be that live document, and the four corners of the policy. You compare the two, eight corners, and determine whether there's coverage. And based on those eight corners, there is not coverage under the policy for Weyerhaeuser Company. Did you hear he was relying on a case cited in your brief for the proposition that a two-letter misnomer, you could look at the larger set of pleadings? Was it Turnstall? Turnstall, to be quite honest, Your Honor, it's been a while since I took a look at it, but my recollection is that it had to do with the insurer coming in, and it was not whether or not there was a duty to defend the named insured, and it talked about burdens of proof. But to be quite honest, Your Honor, it's been a while since I've looked at that. What about my factual uncertainty, my first set of questions, which is, in this set of litigation, is it obvious that NR was the entity responsible for this fire-coating spray? Your Honor, I'm not sure because if you look at their website, they say Weyerhaeuser Company has come out, and I think we've cited to the website, Weyerhaeuser Company has come out with a public statement that it plans on doing X, Y, and Z with respect to the flak jacket. I will admit that the contract between Weyerhaeuser, NR, and Simsboro, it was between Weyerhaeuser, NR, and Simsboro. But as to who was responsible for the flak jacket, who was responsible for not telling, because that's the other issue, is that they set up little Simsboro in this town in Weyerhaeuser's plant to do their coating, but they're in charge of the formula. Nobody knows. It's a secret formula. They deliver the formula and say, you know, you need to do this. But I don't know who was in charge of telling the public when they found out, supposedly as soon as they developed it, that there was off-gassing of formaldehyde. I don't know who that entity is. But for purposes of the duty to defend, we're constrained by the eight corners, and there is no duty to defend. And it was logical in this instance when they are not an insured, where they do not qualify as an insured, that there is no indemnity coverage either. And we cite to the Western District's first petroleum case. We cite to the Fourth Circuit's Wagner v. Tammany case because they need to be insured. As this Court recognized in James v. Hyatt, in the Musgrove case, they have to be an insured. We're not talking about our insured. They make a big deal that we were defending our insured Simsboro. But, of course, Simsboro is our insured. They are strangers to the policy. And as strangers to the policy as recognized recently in that Savoy case, which is directly on point, the Savoy case said that for purposes of an additional insured, it is not the same as a named insured. And they have to show that they fall within the additional insured endorsement. And Weyerhaeuser Company is not named in our additional insured endorsement. There is a reference to the insured contract. I'm sorry. No, no, you go. An insured contract. And I also take their position to be that that includes the Simsboro in our manufacturing agreement, which mentions Weyerhaeuser Company, right? The insured contract is an exception to a contractual liability exclusion. An exception to an exclusion never provides coverage. And if you read that exclusion and an exception, it talks about the insured. And there is myriads of cases that talk about it. The Ordonez case out of Louisiana Third Circuit, the Musgrove case out of the Fifth Circuit, the Lopez case out of the Third Circuit, and McKenzie and Johnson, the leading insurance treaties in Louisiana, all of them talk about that you cannot create coverage by arguing contractual indemnity. In fact, they would not even have standing. In Louisiana, you can only bring a claim against an insurer as a tort claimant under the direct action statute, no contract claim, or as an insurer. You cannot suddenly say, well, I'm now an insured, or get the benefit of being an insured through the contractual liability exclusion, because to do otherwise would make additional insured coverage meaningless. That's what Savoie says. So basically your position is that the insured contract reference doesn't change what Savoie says, which is no third-party beneficiary, name them as an additional insured. No third-party beneficiary, and they do not have rights under the coverage whatsoever. And Rogers is completely inapplicable, as Savoie recognized. It was decided wrongly. It hasn't been cited for this proposition in any other case. And if you look at the, well, first of all, it had very different language, very different policy language, and it was a knock-for-knock indemnity situation. But if you actually look at the cases that they rely on, the Ledet and the Haddad case, they find that there was no third-party beneficiary. It was in connection with condominium associations and tenants and landlords, but they find no third-party beneficiary. There is nothing in that case that, as admitted by the appellants, there's nothing in that case that stands for the proposition that a stranger to the policy can sue an insurer under the contractual, an exception to a contractual liability exclusion. And Rogers solely relies on Ledet and Haddad, and there's no real analysis as to how it gets to a third-party beneficiary, and it would lead, again, to an odd result. It would be absurd to say that a stranger to a policy can suddenly become an additional insured or get the benefits of an additional insured by simply having a contract that they're not a party to, that with Simsboro and NR there was a party to it, and suddenly become entitled to coverage under the policy. And in this instance, you know, it's Weyerhaeuser Company itself that was the named defendant. And just briefly, to get to one of his points with respect to no duty to indemnify, again, I think logic dictates that because they are not an insured, they have no rights under a policy, as Savoy noted and as Wagner noted. But moreover, under the Louisiana Comparative Fault Scheme, they could never be held liable for the acts or omissions of Simsboro. Here, we don't have an underlying liability trial. What we had is that Simsboro and Weyerhaeuser, both of them, you know, I don't know, but certainly Weyerhaeuser Company as a defendant and Simsboro as a defendant in two of the cases, not all of the cases, settled the liability together, and they admit Burlington paid for Simsboro liability. We paid settlement. It wasn't as if Weyerhaeuser settled on its own and got an assignment of rights to proceed against Simsboro. We each participated in the settlement. There's never been a judgment finding liability with respect to Simsboro, and there could never be a judgment finding against Weyerhaeuser that would implicate Simsboro because under the Louisiana Comparative Fault Scheme, everybody's liable for their own fault. And so whatever fault they would have would be assessed to them. They cited briefly in their reply brief a strict liability case, a Celestine case. That's been overruled by statute. Strict liability is now negligence as well. And so in order for them to have any liability, Weyerhaeuser, they would have to have, under Louisiana law, they could never have been found for the fault of Simsboro, and so there could be no indemnity even if they were to find that they were an insured under the policy. Just real quick, we also have the total pollution exclusion as an additional ground, even if they were found to be qualified as an insured. Thank you, Your Honors. Thank you. Is it Mr. Schmeichel? Seth Schmeichel? No rush, I'm just wondering if I'm pronouncing it right. You have five minutes. Your Honor, Seth Schmeichel. Schmeichel. Thank you. Happens my whole life. I know. I'm sorry. Quite all right. On behalf of Evanston Insurance Company, we have joined in and embraced all of the arguments Burlington and Ms. Elliott made in her briefs as well as today. We are the excess insurer over Burlington Insurance Company to the extent that Burlington prevails, we similarly prevail. I stand before you today to talk about a unique issue that we have raised separately in our brief concerning the consent to settle clause that appears in Evanston's policy. That is at record site, page 557, and provides we will have no obligation under this policy with respect to any claim or suit that is settled without our consent. Nowhere in this petition complaint is there ever an allegation that they sought Evanston's consent to settlement. This court established in the New England v. Barnett case that consent to settle clauses such as this one are in fact enforceable. The out-of-state jurisdiction has no application to this. This court has already established it. This court, so without that allegation, we are due to be dismissed. And so we think it should be affirmed on that ground. This court did establish three exceptions to when the consent to settle clause may not apply. And I want to address why they're not going to apply here ever, which is why an amendment would be futile. The first exception is if Evanston had wrongfully defended, chose not to defend. We are an excess insurer. We have no obligations under our policy as found on page 557, paragraph 1-4, to defend the insured until the primary insurer has exhausted their limits. That has never been alleged. There's not an allegation. We have an allegation that they will or may have that's lurking in here. But you heard Ms. Elliott there say that with respect to two of them, had this all worked out correctly and the correct company been named, they might have had a duty to defend in two of those suits, but not the one without Simsboro. That's fine. We don't have an obligation, though, until they fulfill their defense obligations and exhaust their policy. Their policy will never be depleted by paying defense costs. This is not eroding limit policies. Directors and officers' policies, E&O policies, often have eroding limits where the defense costs will erode the limits. That is not these policies. Burlington, if they ever had a duty to defend, which I do not think they did, would be providing a defense until the case is resolved. We were never going to have a defense obligation in these cases. So that exception to the Consensus Settle Clause is never going to get applied in this case. The second exception is, well, did we wrongfully refuse to provide coverage? Did we wrongfully refuse to pay this settlement? We never got invited to pay the settlement. Look at the allegations in this complaint. How often is Evanston mentioned? It's all Burlington didn't respond. We demanded Burlington to provide a defense. We told Burlington about the mediation. Okay, where did you say we've been provided an opportunity to settle this for X, no idea what X is, will you pay it? And if not, do you consent to us paying it? It doesn't exist. They didn't do it. It's not alleged. They can't allege it. And they're not even telling you in the briefs, oh, please let us go amend. We have that documentation. We'll supplement. They're saying let us do discovery to see if Evanston may have consented to their settlement in communications with Simsboro or Burlington. It's absurd. There's no need for discovery. There's no need for an amendment. They apparently went and settled the case. They were frustrated with Burlington, and they were going to take their, and we've been just added to this suit in case there's not enough money from Burlington, should Burlington be inaccurate. But they never sought our consent to the settlement, and no amount of discovery is going to change that. They had an obligation if they were ever going to qualify as an insurer, if you look in the Burlington policy at page record site 510, separation of insurers, the policy is treated differently for each insurer. So if they get over every hurdle Ms. Elliott laid out, which I don't think they should, they still have to then be an insured, a separate insured and do what the policy says. And since our policy has the same terms as the Burlington policy, we have a separation of insurers clause, and they needed to get our consent. They did not do that. And trying to do discovery to see if we consented to Simsboro's settlement has got nothing to do with them not asking us did we consent to their settlement. So on those additional grounds beyond all of the ones Ms. Elliott raised, we ask that you affirm the dismissal in favor of Evanston Insurance Company. Thank you. Mr. Smith. A few points, Your Honor. Your Honors, with respect to the Boudreaux 1 case, the insurers claim that there's no mention of Simsboro in that case. It's correct that they weren't a named defendant in that case, but reading from paragraph 20 of the Boudreaux 1 complaint, it makes clear that the employees of Simsboro, quote, had inadequate protection. There's an array of similar allegations in that complaint about what are effectively OSHA-related, what would be violations for the employers in that case. Those are acts and omissions of Simsboro. There's no requirement that they be a named defendant in the case. And, again, we would direct the court to the Romara case, which makes very clear insurers have to factor in the fact that sometimes companies will be omitted from pleadings because of things like the workers' compensation bar and plaintiff's efforts to plead around that. We would reemphasize that this is a 12B6 dismissal in this case. So all factual allegations in Weyerhaeuser's petition must be taken as true and viewed in the light most favorable to Weyerhaeuser. Here we have pled that there was a misnomer in the original petition, and that is a controlling pleading. Anything else and that it was clear in subsequent pleadings, we've pled that as well. And so most of what they've discussed in their argument is something that will be fleshed out in discovery, will be sorted out at the motion for summary judgment phase, and we feel confident in our position about how that happened. This is, at the end of the day, a case about a misnomer in the petition, and we do believe a misnomer is a fundamentally different thing in terms of, you know, the party that is before the court. We've cited cases from other circuits or from other states kind of across the country illustrating this fact that a misnomer is something that is not substantive, that defendants can hide behind. The case is cited by the insurers that relate to parties not being before the court and therefore making judgments null and void. Those are personal jurisdiction conclusions. That's something that can be waived by a defendant. And so Weyerhaeuser N.R. stepping into litigation is something that is their right to do. There are an array of different ways. We could have asked the plaintiffs to amend the petition. We could have formed some sort of formal substitution. But Weyerhaeuser N.R. can also just answer the complaint, and we've done that. You both are helping greatly at a level of sophistication, but this simplicity, you haven't brought up reformation. Is that the flip side of misnomer, or are the two inconsistent with one another? The reformation is about Weyerhaeuser Company's coverage, right? So they repeatedly claim that they have to be an insured, and we're claiming that Weyerhaeuser N.R., who is an insured. But as to Weyerhaeuser Company, we haven't really discussed the reformation. And we would largely rest in our briefing on that issue, Your Honor. But reformation solely with respect to Weyerhaeuser Company being named as an insured, we've alleged that we should be entitled to discovery at least at the 12B6 phase on whether that error was solely Simsboro's error or whether it was both Simsboro and Burlington's error. I would note, and then with respect to, there's a difference here between claims as an additional insured and third-party beneficiary claims. The insurers referred to an array of cases to claim that there was no duty here, but like the Ordonez case, that's not a third-party beneficiary case. And, in fact, it's also the insurer said it was from the Louisiana Third Circuit. It's actually from the Louisiana Fourth Circuit. It's a case from the 1970s. Rogers, from two years ago or three years ago, is also from the Louisiana Fourth Circuit. It's actually a third-party beneficiary claim. And so that case should be controlling on the subject, not an array of cases that talk about circumstances where a third-party beneficiary claim has not even been made. Lastly, I would like to touch on the comparative fault piece. They are correct that the statutes have been amended. 2317.1 is effectively a negligent statute at this time. That is not true of the LPLA and Weyerhaeuser. There are claims under the LPLA for strict liability in the underlying cases. And so, again, at the 12 v. 6 days, we don't have information about the underlying settlement in this case. That's not before the court, the terms of that settlement agreement. That was something that was resolved at a joint mediation involving Simsboro, Burlington, and Weyerhaeuser. It was a joint settlement. There was not an allocation of we're settling our fault and you're settling your fault. And, again, all of that is our matters that will be sorted out at the merit stage but aren't right for consideration here at the 12 v. 6 days and aren't part of the record on appeal before the court. Thank you. Thank you, Your Honor. No expressions when opposing counsel is speaking. All right, the case is submitted. We'll call the final case, 2240.